UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 APR 21 A 7 45
U.S. DISTRICT COURT
HARTFORD, CT.

IN RE MARRA

CADLE COMPANY,

   Creditor/Plaintiff-Appellant,

V.

ROBERT L. MARRA,

   Debtor/Defendant-Appellee.

CASE NO. 3:03CV402 (RNC)

RULING AND ORDER

This is an appeal from a decision of the Bankruptcy Court (Dabrowski, Chief Judge), entered after a bench trial in an adversary proceeding, granting a discharge to the debtor, Robert L. Marra, over the objection of a creditor, Cadle Company. Cadle opposes a discharge on the ground that, after it attached Marra's personal bank accounts, he created a limited liability corporation, opened an account at the same bank in the name of the L.L.C., and proceeded to use the L.L.C. account rather than the accounts that had been attached, in violation of 11 U.S.C. § 727(a)(2)(A). Marra has not responded to Cadle's appeal. For the reasons that follow, the case is remanded to the Bankruptcy Court for a determination of whether Marra intended to cause harm to Cadle by significantly hindering or delaying its collection efforts.

Facts

On March 3, 1992, Cadle's predecessor-in-interest obtained a state court judgment against Marra and his brother in the amount of $37,890.45, plus costs. Years later, Cadle acquired the

judgment, apparently without notice to Marra. On Cadle's application, the state court issued a bank execution. On or about September 13, 2000, Cadle caused the bank execution to be levied on Marra's individual bank accounts ("individual accounts") at Webster Bank in the amount of $3,731.93. Marra had no prior dealings with Cadle.

Prior to the execution, Marra used the Webster Bank accounts for his personal affairs and in connection with two investment properties he owned. He deposited rental income from the properties into the accounts and wrote checks to pay mortgages on the properties. After the execution was levied, Marra assumed that any funds deposited into the accounts would be taken by Cadle, thereby triggering defaults on the mortgages on his investment properties. After consulting a lawyer, he created Arram, L.L.C. ("Arram"), and opened up a checking account in Arram's name at Webster Bank. From then on, he deposited the rental income into the Arram account and used it to pay the mortgages, expenses associated with the rental properties and for some of his personal needs.

On March 7, 2001, Marra filed a petition under Chapter 7 of the Bankruptcy Code. Marra disclosed the existence of Arram in his bankruptcy schedules and at the first meeting of creditors. Cadle then filed a complaint in the Bankruptcy Court, opposing a discharge for Marra on the ground that he had transferred property to Arram in violation of § 727(a)(2)(A). Chief Judge Dabrowski was not persuaded. Crediting Marra's testimony, he

found that Marra did not act with the requisite intent to hinder, delay or defraud Cadle. Rather, Marra's "primary motivation" was to preserve his interest in the rental properties and thus benefit his creditors. The opening and use of the Arram account "technically hindered and delayed" Cadle, and the deposits into the account were "transfers" of Marra's property, but the impact on Cadle was merely incidental. Having thus resolved the issue of intent in favor of Marra, Judge Dabrowski denied Cadle's objection to discharge.

Discussion

Under § 727(a)(2)(A), if a creditor demonstrates by a preponderance of the evidence that the debtor actually intended to hinder, delay, or defraud a creditor, the court can deny a discharge. See Keeney v. Smith (In re Keeney), 227 F.3d 679, 683 (6th Cir. 2000); Peterson v. Scott (In re Scott), 172 F.3d 959, 966-67 (7th Cir. 1999). A discharge may be denied if the debtor transfers funds with the intent to hinder or delay a creditor, even in the absence of intent to defraud. Bernard v. Sheaffer (In re Bernard), 96 F.3d 1279, 1282 (9th Cir. 1996); NCNB Texas National Bank v. Bowyer (In re Bowyer), 916 F.2d 1056, 1059 (5th Cir. 1990). The focus is on the debtor's intent, regardless of the effect of his actions on a creditor. In re Snyder, 152 F.3d 596, 601 (7th Cir. 1998); Casa Invs. Co. v. Brenes (In re Brenes), 261 B.R. 322, 342 (Bankr. D. Conn. 2001); Cullinan Assocs., Inc. v. Clements (In re Clements), 201 B.R. 157, 162 (Bankr. W.D. Va. 1996), aff'd, 215 B.R. 818 (W.D. Va.), aff'd,

3

131 F.3d 133 (4th Cir. 1997). Preference of one creditor over another does not automatically establish the requisite intent, even though the debtor's actions may hinder or delay a creditor. See Dean v. Davis, 242 U.S. 438, 444 (1917); Dubrowsky v. Estate of Perlbinder (In re Dubrowsky), 244 B.R. 560, 576 (E.D.N.Y. 2000). Conversely, the mere fact that the debtor's actions were intended to benefit some creditors does not necessarily preclude a finding that the debtor also intended to hinder or delay another creditor, thus warranting denial of a discharge.[1]

In a recent case with similar facts, a Bankruptcy Court's decision to deny a discharge was affirmed on appeal. See Locke v. Schafer (In re Schafer), 294 B.R. 126 (N.D. Cal. 2003).[2] As in this case, the objecting creditor's attachment of the debtor's

---

[1] See First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1343 (9th Cir. 1986) (intent to protect some creditors irrelevant once intent to delay or hinder other creditor established by direct evidence); Locke v. Schafer (In re Schafer), 294 B.R. 126, 130-31 (N.D. Cal. 2003) (debtor violated § 727(a)(2)(A) by opening new bank account because creditor attached other account, even though purpose was to pay off other creditors on pro rata basis); Shappell's, Inc. v. Perry (In re Perry), 252 B.R. 541, 547-48 (Bankr. M.D. Fla. 2000) (discharge improper even though debtor used funds to pay some creditors to the detriment of others to keep business afloat); First Leasing Co. v. McGalliard (In re McGalliard), 183 B.R. 726, 732-33 (Bankr. M.D.N.C. 1995) (transfer of funds to Internal Revenue Service done with intent to delay and hinder other creditor within meaning of statute).

[2] See also Camacho v. Martin (In re Martin), 88 B.R. 319, 322-23 (D. Colo. 1988) (reversing decision granting discharge to debtor who had changed bank accounts to prevent creditor's garnishment of assets pursuant to state court judgment; finding debtor's proffered justification of paying off other debtors irrelevant because debtor was clearly playing "hide and seek" with his assets in an effort to prevent debtor from collecting judgment in its favor).

4

bank account prompted the debtor to open and use a different account. The debtor testified that his purpose in opening the new account was to facilitate paying other creditors. Id. at 130. He also testified, however, that he placed funds into the new account in order to prevent the objecting creditor from attaching them. The court found that, as a matter of law, the debtor's actual intent to thus hinder the objecting creditor precluded him from getting a discharge, regardless of his intent to benefit other creditors. Id. at 130-31.

The statute does not necessarily dictate such a stringent approach. See In re Adlman, 541 F.2d at 1006 n.11 (suggesting that the wrongful act must be accompanied by a sufficiently "culpable intent"); Panuska v. Johnson (In re Johnson), 80 B.R. 953, 960 (Bankr. D. Minn. 1987) (denial of discharge for pre-petition conduct should be limited "to those cases where a debtor's actions are truly blameworthy in an equitable sense"). Several courts have construed the statutory phrase "hinder or delay" to mean that the debtor must have an actual intent to significantly impair a creditor's collection efforts. See, e.g., First Leasing Co. v. McGalliard (In re McGalliard), 183 B.R. 726, 732 (Bankr. M.D.N.C. 1995) ("substantially and materially hinder or delay"); Weber v. Amer. Savings & Loan Assn. (In re Weber), 99 B.R. 1001, 1017 (Bankr. D. Utah 1989) (same). This somewhat more lenient standard seems to be more in keeping with the Second

Circuit's view of the statute.[3]

As mentioned earlier, Chief Judge Dabrowski found that, although Marra "technically" hindered or delayed Cadle, the effect on Cadle was merely incidental. This finding may imply that Marra did not actually intend to harm Cadle by significantly hindering or delaying Cadle's collection efforts, but the record is unclear.[4] Moreover, when Chief Judge Dabrowski rendered his decision, he did not have the benefit of the opinion in Schafer. Accordingly, I conclude that a remand is in order.

Conclusion

For the foregoing reasons, the judgment is reversed and the case is remanded to the Bankruptcy Court for further proceedings.

So ordered.

Dated at Hartford, Connecticut this 20th day of April 2004.

```
                        Robert N. Chatigny
                        United States District Judge
```

---

[3] In the Second Circuit, § 727 is construed liberally in favor of debtors and strictly against creditors objecting to discharge. See State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1309-10 (2d Cir. 1996); see also Bank of Pennsylvania v. Adlman (In re Adlman), 541 F.2d 999, 1003 (2d Cir. 1976) (considering predecessor statute to § 727).

[4] It is also unclear whether Marra acted in good faith based on the advice of his counsel. See In re Adeeb, 787 F.2d at 1343.

6